25-1423 and 25-1427 all CD. I understand counsel are present and ready to argue and I understand we have Mr. Gorman for the appellant, Mr. Garfinkel for the appellee, and Mr. Gorman, you would like to reserve three minutes for rebuttal, is that right? Okay, so whenever you're ready, I would encourage all the counsel when you come up to the podium, there is a switch on the right side on top that raises and lowers the lectern. I would encourage you to take a second, we won't start your clock, don't worry, get yourself situated and please tilt the microphones towards you so that we can hear you well here in the courtroom, but we can also record what you're saying for our streaming audio that appears on the court website afterwards. Thank you, Judge. So Mr. Gorman, whenever you're ready. May I please the court, Kenneth Gorman for the State Farm concedes at page two of its brief that the August 1st, 2023 version of insurance law section 3420G governs the policy and because the district court's decision was based on the pre-amending opt-in version, judgments simply cannot stand. The statutory text is time-angry. SSL coverage is mandatory in every policy that is issued, renewed, or amended on or after August 1st 2023 unless the insured declines in writing after a compliant notification is given. A compliant notification was not provided to Mr. Ricciardi. The premium disclosure is what the legislature and the superintendent required. The legislature stated purpose was in amending the statute was to make sure that insurance consumers would not unknowingly waive their statutory right to SSL insurance coverage, which is what happens here. Well, I thought your client did waive it and he was told maybe not quite in the form that the new law requires, but he was told everything that is required by the new law. Was he not? What was missing from what information that insurance or company? Well, he was supposed to be. No, no, no. Just answer my question. What information was he supposed to get under the new law that he didn't get? That he would be automatically enrolled in SSL insurance upon the signing of an amended policy that was issued in September 2023. Upon the signing of the amended policy? Well, upon the issuance of the amended policy. Because he didn't have to sign the amended policy, right? It was just a renewal, right? Correct. So that's the piece that you're saying that he wasn't told. That at the moment of renewal it as a default would have been included? Well, you can't waive a right. No, no, no. Just answer that question. Is that the only piece of information that you claim he wasn't told? That at the moment of the automatic renewal he would have had this supplemental insurance coverage had he not already decided to decline the coverage and say, I don't want it. Is that the only thing missing? From the waiver? From the waiver that he signed? No. Is it the only thing missing from all of the information that was provided to him by the insurer? I understand that there's, I think you're right, that the form was wrong. That the procedure used by the insurer was not complied with. But I'm asking for the substance of the information provided to your client. I can't disagree with you with regard to that. Can I ask you to, at the peril of asking too many questions, sorry. Could you just address our decision in Loomis and why, assuming you're right, that there was violation of the New York insurance law, why, in light of our decision of Loomis, reformation of the policy would be an appropriate remedy such that your client gets now, retroactively, the coverage he did not pay for and that he told the insurance company he didn't want? Address Loomis. Okay, insurance law section 3103, subdivision C, writes statutory provisions into every insurance contract. Policy language that is less generous is not enforceable. And that's what the Court of Appeals held in Dingell versus Prudential. Can you just focus on Loomis? I'm curious how Loomis plays into it. Or are you familiar with Loomis? I'm not. Okay, that's fair. It's a decision of our court in 2024 where we held that reformation of a policy was not appropriate, where there was underinsured motorist coverage, which was optional. There was a defective notification, and we said it was optional. It wasn't mandatory. And here, again, right, the supplemental insurance is not mandatory. It's optional, right? You can opt in or opt out, right? You're automatically opted in. I know, that's what I'm saying. Optional as opposed to mandatory. Optional one has to opt. In this case, you have to opt out. You have to opt out. But not mandatory. Our distinction that we drew, I thought, in Loomis is the difference between optional and mandatory. I guess you haven't read the cases. You can't distinguish it. Maybe I can ask the question without talking about Loomis. Tell me if this is a correct understanding of New York law. If a policy provides less generous benefits than the law requires, the court will essentially reform the contract to require the benefits that the law requires. That's correct. But if the failing in the policy or the failing in the conduct of the insurance company involves notice issues that then may affect the choices that the policyholder makes, the court has to conduct an equitable analysis to decide whether, in the context of that case, you need to reform the contract or not, depending on the equities of the situation. Is that general framework consistent with your understanding of New York law? Equitable analysis. The equities don't favor state law. No, no, I understand that. But I want to at least make sure we're having the same conversation. You're not pushing back against the notion that the conversation we're having is about the equity, that there's a notice issue here, and the conversation that we're having is about the equities. Are we at least on the same page about that? Yes, yes. I want to refer the court to two cases that we cite, James v. New York Central Mutual. The Fourth Department reformed a renewed policy to provide coverage that was initially issued when it failed to inform the insurer of a reduction in coverage in violation of the insurance law, 3425D3's mandatory coverage notification requirements. And in Bloom v. St. Paul Travelers, which we also cite, the Second Department reformed the substantive insurance policy because the summary of major coverage changes, which informed the insurer that it no longer included SUM coverage, did not explicitly compare that policy with the prior one in violation of 3425D. Basically, this means that if you don't inform an insurer of the statutory mandatory required notification required in the insurance law, the insurance contract will be reformed to provide the insurance that was declined. I think my time is up. Well, in that case, I'm puzzled by that. In that case, nobody was declining anything. They, right, the notice didn't adequately inform the insurer that they had essentially ensured that they had removed coverage that previously existed. And under those circumstances, in an equitable analysis, the court determined that since the consumer didn't even have the opportunity, didn't have the necessary knowledge to make some changes, that the court would policy to include the deleted coverage. I'm not quite sure how that dictates an outcome here. Maybe I'm missing a link. Well, the insurance regime that's in place, the amended policy, it required that notification be given. Notification was a precondition to the declination. Getting the declination before giving the required notification is a violation of the insurance law. The statute mandates that the premium be provided. The liability be explained. These were not explained. Right. So the crux of your complaint is because the notice, notification was not distinct from the declination, that those were combined in one form, in one act, that that, I guess, negates the effectiveness of the policyholder's decision to decline? He had no statutory right to mandatory coverage when he signed the declination. He didn't know he had a statutory right to mandatory coverage. Well, it's interesting because the forum, perhaps wrongly at the time, said he didn't have a statutory right, right? It said that... It didn't say a statutory right. He said he had a right. I mean, but he already declined it. It was, I mean, he already, he never took the affirmative step of getting the insurance as he was required to do under the pre-amended version. So signing that declination before the policy was issued in September made no sense. But it said, but didn't it say to him, I mean, it would be an interesting question if he had done nothing, whether his doing nothing would have caused the coverage to come into place automatically even before an amendment. If he had done nothing, doesn't the notice tell him that he'll have the coverage if he does nothing? He has to actually take a step to not have the coverage, and he took the step. He took the step before, I mean, he took this, I mean, the insurance department, when it issued the declination in June of 2023, stated that this was supposed to be given in conjunction with the statutory amendment. It wasn't. It was given before. State Farm rushed to give it before it was required to give it. You have to give the notice with the declination. You can't just give the declination before the statute, statute's enacted. That's it. Thank you. Okay. Why don't we hear from your adversary and then Mr. Gorman, you have reserved three minutes for rebuttal. So we'll see you again shortly. So we have Mr. Gorman. Good morning, your honors. Paul Gorfing, for State Farm. State Farm acknowledges that the version of section 3422 that took effect on August 1, 2023, is the governing statute. State Farm complied completely with that statute. As the court is aware, that statute says that any policy that is issued shall automatically include supplemental spousal liability coverage, unless there is a declination by the insured. The court is well aware that there was a declination by the insured on June 26 of 2023, and that declination, pursuant to New York State regulations, carried forward to any renewal of the policy, such as the one at issue here. There was a Now, my adversary argues that Mr. Ricciardi was not able to waive a right which didn't exist yet. In this connection, he cites primarily, I would say, page two of his reply brief, a decision by the Court of Appeals of New York State and Albert J. Schiff. He quotes the following language. This is from my adversary's reply brief. A waiver, quote, cannot be said to have waived a right of which, I apologize, that's the wrong sentence, my apology. A waiver is, quote, a voluntary and intentional relinquishment of a known and existing right. Your honors, the word existing does not appear in the Court of Appeals decision. The Court of Appeals wrote that a waiver is a voluntary and intentional relinquishment of a known right. It doesn't have to exist. So in June of 2023, Mr. Ricciardi was perfectly competent to waive a right that was going to exist later, as long as it was a knowing waiver. And it was a knowing waiver. The declination form— What are we to make, though, of the fact that this, the notice he gave didn't comply exactly with what the statute required? And to the extent, actually, that this is a situation that is perhaps different from the norm because of the fact that it's being sent, the declination is being sent at the same time that the circumstances are changing in a way that may not be familiar, the fact that you didn't, that the company did not comply with the form of the notice, what should we make of that? Well, the company did conform with the form of the notice. Iversary acknowledges as much in his original brief, State Farm obtained this form from the New York State Rules and Regulations. The only difference was that State Farm put its own letterhead on top and put the name of the policyholder. But the notice was adopted directly from the Department of Insurance or Financial Regulation. But I thought the new law requires the policy, the policy itself specify the premium for the coverage. And that was not done here, right? Your Honor, that is correct. That is the one error, if you will. But it is an error. Yes, it is an error. Okay. Now, State Farm does not wish to tell this court that an insurer is not obligated to comply with the law. It was an error, and State Farm will acknowledge that. But his court held in Loomis, that's not the end of the story. There's more to be stated. I cited the case Republic National Bank versus Eastern Airlines from the Second Circuit, which involved a limitation of damages under the Warsaw Convention. Under the Warsaw Convention, the limitation is not effective unless there is a claim check presented. Admittedly, in that case, the claim check was not presented. In this court, the Second Circuit held that, you know, there's no prejudice to anybody. No one got hurt. We're going to overlook this hyper-technical violation and do equity, do what the parties intended, and they enforced the waiver of the limitation of damages. Let us consider, please, what happened here. Back in March of 2023, when the previous policy was issued, the declaration page stated that the premium is $14.60 if you want to pay it. It was an opt-in. He didn't opt in. That's fine. Then, in June of 2023, the declination in question was presented. He said, he signed the declination, I don't want the coverage. This is not for me. Okay. Then, in September of 2023, the policy was renewed, the one in question, and, yes, the premium should have been stated. It wasn't stated. State Farm acknowledges that. But, in the view of all the facts and circumstances, Mr. Charney had already declined the coverage. The declination form said, well, the declaration page said, you have declined coverage, you have declined spouse or liability coverage, and that declination remains in effect unless you tell us otherwise, which means, although the premium wasn't stated, he knew from the previous documents what the premium was. He was given an opportunity to withdraw, if you will, the declination, and he decided not to do so. Can I ask you, if you're familiar with our decision, are you familiar with our decision in Loomis in 2023? Vaguely, not as often as it should be. All right. I guess my question, maybe you'll be ready to answer it or not, that was a case where there was an error by the insurance company, as you notice, on a different form of supplemental insurance, and we held that that error did not warrant reformation of the auto insurance policy to retroactively edit in. But there, if I understand it correctly, that was the kind of supplemental insurance that you had to opt into. In other words, the state of New York did not make a decision that everybody gets this as a default. You had to opt in, and they said, well, you know, it's not a default, so we're not going to add it in. It's optional. Here, it is optional, but it would be the default that this coverage would be provided to everybody. So I guess my question is, analytically, how does that difference between insurance you opt into in Loomis or opt out of, you have to opt out of, and there's a default in this case, how does that play out in terms of our remedy analysis? Loomis is not precisely on point, but analytically, I believe, to use your word, when a right is presented to an insured, and the insured says, no, I don't want it. That is all we need to know. He was completely aware of what spousal liability is. The declination form, as well as the declaration page in the later policy, explained it. I won't regurgitate those words, but it explains exactly what supplemental liabilities coverage is. It says that if you don't have it, you'll be liable. There'll be no coverage for an accident involving the spouse. It goes through the details of it. He knew exactly what was involved. He didn't know the premium that was being charged in September, but he knew from before. What Mr. Ricciardi is asking this court to do is to say, listen, I declined the coverage. I didn't want it. I didn't pay for it, but hey, because of a trivial, non-prejudicial error that they far made, I want this coverage. That's not what the law requires. I do want to stress that there was a lack of any prejudice. I do want to address, before I forget, that my adversary cites cases of Blue versus Travelers and James versus New York Central Mutual. In those cases, an entire policy form had been deleted without notice to the insured. It was a radical, one of the courts used the word, a radical change in the coverage, and so the court enforced the law there. In this case, we're not talking about a radical change. We're talking about keeping the policy basically the way it was, used to have no spousal liability coverage, and now, in view of Mr. Ricciardi's declination, it again will not have spousal liability coverage. It wasn't a radical change. I do need to address two other points. My adversary cites 11 NCRR 61.6b6. He basically, with due respect, quotes it out of context, and it says that it applies only if supplemental coverage is not declined, then the insurer may issue a withdrawal of the coverage. It was declined in this case. That rule is completely inapplicable. Also, my adversary cites a circular letter from the insurance department which states that the declination and the declarations page should not be on the same form. The date of that letter was December 18th, 2023, after all the events of this case that already happened. It is not a corrective effect, and it should not be taken into account. Additionally, that argument was not raised in the lower court, so for both of those reasons, it wasn't reserved for appeal, and the letter was delayed after these events. That letter should not be given any weight. I have about 20 seconds left. Unless the court has any questions, I will arrest the case. Okay, thank you very much, Mr. Gorkinkel. Mr. Gorman, you have reserved three minutes for rebuttal. If there's anything you would like to add. On the second department's decision in Bloom v. St. Traveler's Policy, that was not a radical reformation of an insurance contract. In that case, the insurer was informed of the coverage. It just wasn't informed in the manner that the statute required, and because of that, the insurance policy was reformed to give the insurance, the SRO coverage that was not included in the policy. In this case, SSL insurance was automatically included when the amendment was issued. State form didn't include it. It should have included it. If it wanted a declination, it should have asked for the declination after giving him the appropriate notice. It failed to do so, and because of that, it failed to comply with the statute, which was mandatory, not optional, and under these circumstances, the insurance contract should be reformed to give the statutory minimum. Thank you. Thank you very much. Thank you to both very helpful oral arguments. We will take the case under advisement, and for those of you visiting us today, that means we're not deciding the case right now, but there will be a written ruling at some point in the future. We'll now call the next case of the calendar, Nino Martinenko et al. v. 212 Steakhouse Inc. et al., 24-3262 and 24-3263. The appellees are on submission, meaning there will be no one arguing for the appellees, but we do have counsel. I'm sorry for the appellate. It's confusing here. We have Attorney Shulman. You have many crosses and defendants. Why don't you just tell me exactly what the procedural posture of your client is, because there are too many titles on the brief. May it please the Court, Denise Shulman for the plaintiff appellees and the cross appellant. The undisputed harm that Plaintiff Hook suffered for unpaid minimum wage and overtime compensation are fairly traceable to the wage notice and wage statement violations, and the District Court erred in finding that she was outstanding. Starting with the wage notice violation under Section 195.1, when Hook was hired, she was not told in writing that defendants were claiming a $5 per hour tip credit, even though defendants, in fact, paid her $10 per hour rather than the full $15 minimum wage. That specific omission violated 195.1 and made the payment of the tip compensation. That establishes traceability for Article III standing. Can I ask a sort of procedural question? All of the other plaintiffs, I think, in an effort to generate a final judgment, voluntarily withdrew that claim. Hook was dismissed without prejudice, meaning presumably she could refile with the additional missing piece. I'm puzzled as to what you're looking for here as a remedy. Are you looking for a remand to actually litigate this? We are looking for a remand as to Plaintiff Hook only. The class members 195 claims were also dismissed, but those were effectively dismissed without leave to replete. Those are out of the case. No. They voluntarily dismissed them, but it wasn't without prejudice. Did they go to the state court? It was without prejudice so that they could pursue them in state court if they wished. The District Court's order made clear that it was without leave to replete. The judgment was entered, it just said, without prejudice, silent as to repleting. We actually asked for the court to clarify that. Because you wanted to make sure that it was a final judgment. Exactly. Her order denying her request said, well, since I didn't give leave to replete, they don't have leave to replete, so those claims are out. It needed to be without prejudice because it was a threshold issue rather than a merit issue. Exactly. There was no way that those claims could have been dismissed with prejudice in this case, even if they were fully litigated, because as the R&R correctly found, defendants did violate 195. It was only a question of standing. It's just puzzling to me that having, I take it they didn't go to state court to pursue their claims. As far as I know, no one has done that. They're absent class members, so they tend not to be too active. Well, Martinenko is not an absent class member. No, Martinenko is not. She's not pursuing them either. But Huck wants to. Yes, just to resolve it, you know, in this case, yes. And how do you get around Guthrie? I think this is right in line with Guthrie. Guthrie recognized that these types of violations can lead to monetary injury. It said that the harm that is necessary for standing does not have to be greater than the underlying wage violations. That logic only holds if there is a way for the wage violations to ultimately cause an underpayment. This is actually a more direct path than what Guthrie was talking about and what a lot of other district court decisions have talked about where the plaintiff alleges, if I had this information, I would have taken action sooner to recover the underpayment. Here, the notice failure is the very thing that made the payment of the tip credit rate an underpayment. It's a direct link. No, the underpayment. I was just going to say, the secondary portion of what was also this other, what is it, the 12-NYCRR-100.